IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK STEPHEN WICKLUND,<br><br>              Plaintiff,<br><br>      v.<br><br>JAMES F. PAGE, an individual, dba ASCERTAIN POLYGRAPH SERVICES, dba TREASURE VALLEY POLYGRAPH, and IDAHO DEPARTMENT OF CORRECTIONS,<br><br>              Defendants. | Case No. CV 09-671-S-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is Plaintiff's Motion to Disqualify the Firm of Anderson, Julian & Hull as defense Counsel for the Idaho Department of Corrections ("IDOC").[1] (Docket No. 17.)  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the

---

[1] Plaintiff filed the identical motion in two other pending cases: *Wicklund v. State of Idaho et. al.*, Case No. CV 10-057-EJL-CWD, and *Wicklund v. Idaho Department of Corrections et. al.*, Case No. CV09-674-EJL-CWD. *Wicklund v. State of Idaho et. al.* was dismissed without prejudice by the Court on May 27, 2010, for failing to file an amended complaint.

**MEMORANDUM DECISION AND ORDER - 1**

decisional process would not be significantly aided by oral argument, this matter will be decided on the record before this Court without oral argument.  Dist. Idaho Loc. Civ. R. 7.1.

## I.    Background and Facts

Plaintiff filed his complaint against Defendants alleging a violation of his civil rights pursuant to 42 U. S. C. § 1983, as well as certain state law causes of action for negligence and battery against Defendants James Page, Ascertain Polygraph Services dba Treasure Valley Polygraph, and the Idaho Department of Corrections (collectively referred to as "Defendants"). Attorney Phillip J. Collaer of the firm Anderson, Julian & Hull, LLP (the "Firm"), represents Defendant IDOC.

In his motion to disqualify filed on February 27, 2010, Plaintiff asserts that Ken Nyman, also of the Firm, represented him and his parents commencing in August 2006, to defend them against eviction proceedings. Specifically, Mr. Wicklund states in his affidavit that he had "three different in-person meetings with Mr. Collaer" in August 2006, and he and his parents "hired Anderson, Julian and Hull to represent us" in the eviction matter, which was filed in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Ada, identified as case number "CV-OC-2006-14161." (Wicklund Aff. ¶¶ 1–7, Docket No. 17-2.) After meeting with Mr. Collaer in August of 2006, Plaintiff contends that:

> Ken Nyman, of the firm, began the substantial representation
> in the case.  I had numerous in-person meetings and phone
> conversations with Mr. Nyman. As part of the representation,

**MEMORANDUM DECISION AND ORDER - 2**

> I turned over to Anderson, Julian and Hull almost every
> financial document in my possession.  These documents
> contained critical, confidential and personal financial
> information of every aspect of my finances for 2006, 2007
> and part of 2008. The case was ultimately concluded in March
> 2007. The representation continued for some time after the
> case was closed because Anderson, Julian and Hull also
> handled legal aspect [sic] that arose in our refinancing of our
> primary residence.  This refinancing process also included
> disclosing all of our financial documents. I believe the
> representation ended sometime in 2008, at the time we closed
> on the new loan on our house.

(Wicklund Aff. ¶¶ 8–12, Docket No. 17-2.)  Mr. Wicklund believes that, during the

course of the Firm's representation, he turned over 750–1,000 pages of financial records,

which he claims the Firm still has in its possession.  Mr. Wicklund states he does not

consent to his former law firm representing Defendant IDOC in this case.

In response, Mr. Nyman, who moved to Arizona in December of 2007 to take a

position with the Arizona Attorney General's Office and no longer practices law in Idaho,

affirms he was a partner of the Firm in 2006.  He recalls that Robert and Joyce Wicklund,

Mark Wicklund's parents, and Mark Wicklund, met him at his office in September of

2006 to determine whether Mr. Nyman would represent them.  Mr. Nyman states in his

affidavit that, during the initial meeting with the Wicklunds, "they advised me that they

were being evicted from their home" and they were "attempting to avoid eviction and

negotiate the purchase of their home." (Nyman Aff. ¶ 4, Docket No. 22-1.)  Mr. Nyman

contacted their lender's attorney, Roger Hales, who agreed to extend the hearing for the

eviction so that Mr. Nyman could have time to see if he could help the Wicklunds. (*Id.*)

**MEMORANDUM DECISION AND ORDER - 3**

Mr. Nyman did not undertake representation, stating that "[a]fter a few contacts with Mr. Hales and Mark Wicklund in which I tried to get a clearer picture of how I might be able to help Mark Wicklund's parents, it became clear that I could not represent them, and my contact with the Wicklunds ended." (*Id.*)

Mr. Nyman then states that in "November of 2006, my partner, Robert Anderson, was hired by Liberty Mutual Group" to represent it concerning an insurance dispute with Mark Wicklund.  Because of his earlier involvement with the Wicklunds, Mr. Nyman sent a letter to Mark Wicklund on November 22, 2006, confirming that he did not and had not represented him in connection with the eviction matter, and advising Mr. Wicklund that Mr. Anderson would be representing Liberty Mutual Group in the matter adverse to Mr. Wicklund.  (*Id.* ¶ 5.)  Although Mr. Nyman was of the opinion that no conflict of interest existed, he requested that Mr. Wicklund "waive any conflicts of interest, real or imagined," between Mr. Wicklund and the Firm.  (*Id.* Ex. 1.) Although Mr. Wicklund did not respond to the letter, he did not object to the Firm's representation of Liberty Mutual.

In fact, Mr. Anderson took an examination under oath of Mr. Wicklund on November 28, 2006.  (Collaer Aff. Ex. 1, Docket No. 22-3.) During that examination, Mr. Wicklund raised no objection to the proceeding or Mr. Anderson's involvement. Mr. Collaer attached a copy of the transcript of the oral examination to his affidavit.  (*Id.*)  Mr. Collaer denies ever meeting with the Wicklunds, although he recalls he may have been introduced to the Wicklunds when they first met Mr. Nyman at the Firm. (*Id.* ¶ 3.)

**MEMORANDUM DECISION AND ORDER - 4**

## II.    Analysis

Plaintiff argues that the Firm is disqualified under the Idaho Rules of Professional Conduct from representing IDOC in proceedings adverse to Mr. Wicklund, its former client. Plaintiff contends that the Firm's former representation of Mr. Wicklund is "substantially related" to the subject matter of this lawsuit, because the firm acquired confidential information, such as financial information, relevant to the present case.  Mr. Wicklund alleges that knowledge of his financial status is an integral part of the present litigation, and relies upon *Trone v. Smith*, 621 F.2d 994 (9th Cir. 1980).

Defendant argues first that Mr. Nyman's limited contacts with the Wicklunds did not constitute legal representation. Alternatively, Defendant argues that, even if Mr. Nyman's limited undertakings constituted representation of Mr. Wicklund, the eviction proceedings and this matter are not "substantially related."  Defendant also points out that Mr. Wicklund has filed for in forma pauperis status, and thus any financial information the Firm gathered regarding Mr. Wicklund in 2006 would not be relevant today.  Finally, Defendant argues that Mr. Wicklund did not object to Mr. Anderson's representation of Liberty Mutual Group in an action adverse to Mr. Wicklund during 2006, and thus Mr. Wicklund waived any further conflict of interest. Defendant contends Mr. Wicklund's motion is frivolous, and requests costs and fees for having to respond to the motion.

While not wishing to accuse Mr. Wicklund of submitting false evidence, even a cursory review of the affidavits submitted in support of and in opposition to the motion to disqualify indicates Mr. Wicklund could not possibly be entirely truthful. First, Mr.

**MEMORANDUM DECISION AND ORDER - 5**

Wicklund states in his affidavit that Mr. Nyman's representation of him and his parents "ended sometime in 2008," yet Mr. Nyman had moved to Arizona in December of 2007 and commencing in January of 2008 no longer practiced law in Idaho. Mr. Nyman began working in January of 2008 for the Attorney General's Office of Arizona, a government position. It would not have been possible, therefore, for Mr. Nyman to have continued representing Mr. Wicklund in 2008 as Mr. Wicklund contends. Moreover, the Court was given no reason to disbelieve the facts set forth in Mr. Nyman's affidavit.  There is no evidence other than Mr. Wicklund's conclusory statements that any attorney client relationship, to the extent one existed, continued beyond November 22, 2006, the date Mr. Nyman wrote the letter to Mr. Wicklund.

Second, Idaho Rule of Professional Conduct 1.7 is intended to prevent attorneys from accepting representation adverse to a current client.  Although Defendant IDOC did not raise this rule, the facts implicate it. Mr. Wicklund contends Ken Nyman represented him and his parents commencing in August of 2006, and continuing for "some time after" the eviction matter was closed in March of 2007. But Mr. Anderson, also of the Firm, represented Liberty Mutual Group in 2006, and took an examination of Mr. Wicklund under oath on November 28, 2006. The time periods for the Firm's representation of Mr. Wicklund and Liberty Mutual Group overlap.  If Mr. Wicklund's testimony is credited, Mr. Wicklund was a current client of the Firm at the same time the Firm represented Liberty Mutual Group, whose interests were adverse to Mr. Wicklund's interests.

But Rule 1.7(a)(2) together with Rule 1.10(a) prohibits a lawyer or another

**MEMORANDUM DECISION AND ORDER - 6**

member of his or her firm from representing a client if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . unless . . . each affected client gives informed consent, confirmed in writing."  If Mr. Wicklund was a current client of the Firm, there is no evidence that informed consent was given by either Mr. Wicklund or Liberty Mutual Group.  And it is clear from Mr. Nyman's letter sent six days prior to Mr. Anderson's examination of Mr. Wicklund that any representation of Mr. Wicklund by the Firm, if indeed there had been, had ended, yet Mr. Wicklund asserts the Firm continued to represent him and his parents well after March of 2007.  Either Mr. Wicklund is mistaken, or Mr. Wicklund is making false statements. The mere possibility that Mr. Wicklund is not truthful, and his attorney's careless submission of his client's affidavit without addressing the above facts in the reply brief, let alone verifying the truth of the assertions in his client's affidavit, is troubling to the Court.

In addition, a review of the docket in *Nations Prop. Mgt. v. Robert Wicklund, et. al*, Ada County Case No. CV-OC-2006-14161, indicates that case was filed on August 3, 2006; no attorney entered an appearance on behalf of the Wicklunds; the Wicklunds did not file an answer in that case; and, due to inactivity, the case was dismissed on March 19, 2007.[2] It is clear that Mr. Nyman did not enter a formal appearance on behalf of the

---

[2]  Pursuant to Fed. R. Evid. 201(b) and (c), the Court takes judicial notice of the docket filed in the Fourth District Court for the state of Idaho, in and for the County of Ada, captioned *Nations Prop. Mgt. v. Robert Wicklund, et. al*, Ada County Case No. CV-OC-2006-14161.  The docket can be accessed by the public at the following website, https://www.idcourts.us/repository, by clicking on the link "case number search," and inputting the case number.  The site was last accessed by the Court on May 25,

**MEMORANDUM DECISION AND ORDER - 7**

Wicklunds or undertake representation of them in the eviction case referenced by Mr.
Wicklund. Thus, a review of the public record indicates no "substantial" representation of
the Wicklunds by the Firm occurred.

Turning to Rule 1.9, that rule together with Rule 1.10(a) prohibits a lawyer or any
member of his or her firm who has formerly represented a client in a matter from
representing another person "in the same or a substantially related matter" without
informed consent.  The comments to Rule 1.9 define a matter as "substantially related"
for the purpose of the rule "if they involve the same transaction or legal dispute or if there
otherwise is a substantial risk that confidential factual information as would normally
have been obtained in the prior representation would materially advance the client's
position in the subsequent matter."  Idaho Rules Prof'l Conduct R. 1.9 cmt. 3.  While the
former client is not required to reveal the nature of the confidential information learned
by the lawyer to establish a substantial risk, a "conclusion about the possession of such
information may be based on the nature of the services the lawyer provided the former
client and information that would in ordinary practice be learned by a lawyer providing
such services."  Idaho Rules Prof'l Conduct 1.9 cmt. 3.  *See also Trone v. Smith*, 621 F.2d
994, 998 (9th Cir. 1980).  The test under Rule 1.9 requires the court to measure the
allegations in the complaint and the nature of the evidence that would be helpful in
establishing those allegations to determine if the two matters are substantially related.

---

2010, and a printed copy of the state court docket in Ada County Case No. CV-OC-2006-14161 is
attached to this Order.

**MEMORANDUM DECISION AND ORDER - 8**

*Trone*, 621 F.2d at 1000.  Although the issues in the two representations do not have to be identical, general knowledge about a client alone is insufficient to warrant disqualification.  *Trone*, 621 F.2d at 1000.  Substantiality is present if the factual contexts of the two representations are similar or related.  *Trone*, 621 F.2d at 998.

Even if Mr. Nyman's assistance constituted representation of Mr. Wicklund[3] and his family during September of 2006, Idaho Rule of Professional Conduct 1.9 is not implicated.  Pursuant to the standards in *Trone* and the comments to Rule 1.9, the Court fails to see any legitimacy to Plaintiff's argument that the Firm's prior limited representation of Mr. Wicklund and his parents bears any substantial relationship with Mr. Wicklund's claims against IDOC in this action.  Mr. Wicklund affirms that, in connection with the eviction proceedings, the Firm contacted opposing counsel, negotiated extensions and modifications to the eviction proceedings to benefit Mr. Wicklund, and prepared documents on his behalf, such as purchase and sale documents for the purchase of the Wicklunds' residence.  (Pl.'s Reply Brief at 2, Docket No. 25.)  Mr. Wicklund contends also that the Firm acquired his "secret" financial information.

The claims in this action involve allegations that, in January of 2008, Defendants violated Mr. Wicklund's constitutional right to due process by classifying him as a violent sexual predator without granting him an opportunity to defend himself in that process. To demonstrate a substantive due process claim, a plaintiff must show that a government

---

[3]  Although the Firm contests this point, the Court assumes for the purposes of this decision that Mr. Nyman's limited undertakings constituted representation of Mr. Wicklund, but does not decide that issue.

**MEMORANDUM DECISION AND ORDER - 9**

official deprived him or her of a constitutionally protected life, liberty, or property interest. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Plaintiff provides no explanation, other than his bare assertion, how the financial information he allegedly provided to the Firm in September of 2006 would be relevant to the present lawsuit. Any information acquired in the course of the Firm's prior representation of Mr. Wicklund during the eviction proceedings or assistance provided with preparing purchase and sale documents to purchase a primary residence would be of absolutely no value in proving or defending against Mr. Wicklund's present allegations against IDOC and the other Defendants.  *See Trone*, 621 F.2d at 1000 (requiring the relationship to be measured by the allegations in the complaint and the nature of the evidence that would be helpful in establishing those allegations). There is a complete absence of any related factual matters between the eviction and the current due process violation allegations, and no close relationship between the two matters.

Moreover, as IDOC points out, even if the Firm acquired "financial information" from its prior representation of Mr. Wicklund, Mr. Wicklund has applied for and was granted in forma pauperis status. In other words, he currently has no finances to speak of. (*See* Order Granting IFP Status, Docket No. 28.) And to add insult to injury, the argument that Mr. Wicklund's financial information could be "substantially related" or otherwise material to IDOC's defense of the due process claims asserted against it is without merit. Mr. Wicklund's financial strength has absolutely no bearing on the factual and legal issues present in this action, which will require Plaintiff to prove a state actor deprived

**MEMORANDUM DECISION AND ORDER - 10**

him of his constitutional right to due process.[4]

IDOC has requested an award of reasonable attorney fees associated with responding to Mr. Wicklund's motion on the grounds that it is frivolous, based upon false facts, and legally without merit.  Fed. R. Civ. P. 11(b) permits the Court to sanction litigants and their lawyers for violating its provisions and submitting pleadings or motions for an improper purposes, that are frivolous or based upon factual allegations that have no evidentiary support.  However, Rule 11 requires the party requesting sanctions to do so by motion, and to provide an opportunity for the offending party to withdraw the offensive pleading.  Fed. R. Civ. P. 11(c)(2).  There is no evidence that IDOC followed Rule 11's prerequisites prior to requesting sanctions.

Nevertheless, Plaintiff's attorney is admonished for failing to conduct a thorough investigation of the facts; failing to respond to the glaring untruth or, at the very least, misunderstanding on Mr. Wicklund's part revealed by the Firm's affidavits and a review of the public records accessible on the internet; and asserting an untenable position that an erudite review of the Idaho Rules of Professional Conduct and *Trone* clearly discredits.  Plaintiff's counsel should heed the Court's admonishment and undertake a more thorough

---

[4] Because of its decision, the Court does not decide the issue IDOC raised concerning whether Mr. Wicklund waived any future conflict of interest by failing to object to the Firm's representation of Liberty Mutual Group in the action adverse to Mr. Wicklund.  It is not clear whether a prior waiver of adverse representation constitutes a blanket waiver for any other case an attorney might undertake that is adverse to a former client.  *See Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983) (finding a waiver of the right to disqualify counsel where the former client failed to object to the firm's representation in a case undertaken subsequent to the former representation, but not deciding whether a waiver constitutes a blanket waiver in perpetuity).

**MEMORANDUM DECISION AND ORDER - 11**

investigation before filing future motions and pleadings with the Court.

**III.     Conclusion**

Based upon the foregoing, Plaintiff had no tenable ground upon which to bring his

motion, and the motion to disqualify will be denied.

<b><u>ORDER</u></b>

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that:**

1)     Plaintiff's Motion to Disqualify the Firm Anderson, Julian & Hull as

Defense Counsel (Docket No. 17) is **DENIED**.



DATED: June 2, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 12**