JACOB D. DEATON, ISB #7470
**LAW OFFICE OF JACOB D. DEATON, PLLC**
776 East Riverside Drive, Suite 200
Eagle, Idaho 83616
Tel: (208) 685-2350
Fax: (208) 685-2351

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK S. WICKLUND, an individual ) | |
| ) | Case No. 1:09-cv-00671-EJL |
| Plaintiff, ) | |
| ) | |
| v. ) | **AFFIDAVIT OF CHIP MORGAN** |
| ) | |
| JAMES F. PAGE, an individual, dba ) | |
| ASCERTAIN POLYGRAPH SERVICES, dba ) | |
| TREASURE VALLEY POLYGRAPH, and ) | |
| IDAHO DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

Location:_____ )
                         ) ss.
Country: _____ )

Chip Morgan, being first duly sworn upon oath, deposes and says:

1. In January, 2008, I was an equal partner in a polygraph company, Idaho Polygraph Associates, LLC., with James F. Page, located at 5400 W. Franklin Road, Suite K, Boise,

AFFIDAVIT OF CHIP MORGAN - 1

Ada County, Idaho 83705.

2. In January, 2008, I observed two IDOC Probation Officers, Brandon Sutherland and Claudia Barnett Montgomery, bring an in-custody prisoner, Mark Wicklund into our office suite. I knew both Officers Sutherland and Montgomery from previous business dealings and I knew Mr. Wicklund from previous polygraph appointments.

3. Immediately, I could see that Mr. Wicklund seemed to be in distress. He was limping heavily, had completely sweated through his ACSO Jail coveralls, was breathing heavily and appeared very white in his face. As he sat in a chair, I could see sweat all over his face.

4. I knew from my limited medical training, acquired from taking first aid classes over 31 years as a law enforcement first responder, that the combination of sweating and having a pasty-white complexion could be the signs of trouble medically. As Mr. Wicklund was a very heavy man (I guessed him to be approximately 500 pounds at that time) I was specifically worried about heart problems.

5. I spoke with Mr. Wicklund about the situation and the reason he was at our office. He didn't seem to "track" with me in conversation and couldn't explain to me why he was at my office.

6. I then asked him what was wrong with him physically. He told me that he was in withdrawals from a prescription pain medication, Norco, which he had taken for years due to bad knees. Mr. Wicklund told me that he had been arrested several days earlier by

AFFIDAVIT OF CHIP MORGAN - 2

Officer Sutherland and was not allowed to bring his pain medication with him to the jail. As a result, he was "detoxing" from Norco.

7. I then spoke with Officer Sutherland who told me that Mr. Wicklund had been arrested several days earlier for a probation violation and was now in my office for a polygraph examination regarding that probation violation. I informed Officer Sutherland that in my opinion Mr. Wicklund was not medically fit to undergo a polygraph examination. Officer Sutherland told me that he had already arranged to have the examination done by James Page.

8. James Page arrived at our offices shortly thereafter and I pulled him aside. I told James that I thought Mr. Wicklund was in drug withdrawals and was not suitable for a polygraph. Mr. Page said I was probably correct but he was going to test him anyway because he needed the money for doing the polygraph.

9. Unsuccessful in my attempts to have either the Probation Officer (Sutherland) or the Polygraph Examiner (Page) halt the test, I next tried to have the supervising SANE therapist, Melissa Mezo, intervene. I went to the SANE offices (next door to my offices) and spoke with Ms. Mezo, telling her about my concerns. She stated that she was unable to do anything about a P&P test, which is technically accurate.

10. My impression of Mr. Wicklund's condition was that he was in obvious distress and in obvious pain. His heavy sweating and ashen complexion, coupled with gasping for breath, indicated to me that he shouldn't take a polygraph examination.

AFFIDAVIT OF CHIP MORGAN - 3

11. I have interviewed thousands of people over the last 35 years, a large number of whom have been incarcerated either in a jail or in a prison.

12. I would not have interviewed anyone in Mr. Wicklund's physical condition, with or without a polygraph, and have terminated many interviews when I observed similar physical symptoms.

13. In short, I believe that Mr. Wicklund should not have even been interviewed in his physical condition, let alone polygraphed.

14. I also believe that a person who is in-custody, shackled, in drug withdrawals, in obvious pain, sweating and out of breath does not have the requisite free will to sign a "rights waiver" form.

DATED THIS 15 day of February, 2011.

_____
CHIP MORGAN

SUBSCRIBED AND SWORN before me this 15TH day of February 2011.

_____
Notary Public for U.S. ARMY
Residing at: BAGHDAD, DZAB
My Commission Expires: 17 FEB 13

AFFIDAVIT OF CHIP MORGAN - 4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ____ day of February, 2010, I served a copy of the foregoing on CM/ECF Registered Participants as follows:

| | |
|---|---|
| Phillip J. Collaer<br>Anderson, Julian & Hull, LLP<br>C.W. Moore Plaza<br>250 South Fifth Street, Suite 800<br>P.O. Box 7426<br>Boise, Idaho 83707-7426 | pcollaer@ajhlaw.com |
| Brady Law, Chartered<br>Michael G. Brady<br>Oscar S. Klaas<br>St. Mary's Crossing<br>2537 W. State Street, Suite 200<br>Boise, Idaho  83702 | bradylaw@bradylawoffice.com |

_____/s/_____
JACOB D. DEATON

AFFIDAVIT OF CHIP MORGAN - 5