UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MARK STEPHEN WICKLUND,

                Plaintiff,

vs.

JAMES F. PAGE, an individual, dba
ASCERTAIN POLYGRAPH
SERVICES, dba TREASURE VALLEY
POLYGRAPH, and IDAHO
DEPARTMENT OF CORRECTIONS,

                Defendants.

Case No. 1:09-cv-671-EJL-CWD

**REPORT AND RECOMMENDATION**

## REPORT

## INTRODUCTION

Plaintiff Mark Wicklund ("Wicklund") alleges that Defendant James Page
("Page") violated his Fifth Amendment privilege against self-incrimination, and
committed battery by negligently conducting a polygraph examination when Wicklund
lacked the mental capacity to consent or waive his Fifth Amendment Rights. Wicklund
asserts a claim under 42 U.S.C. § 1983, as well as state law claims for negligence and
battery. (Compl., Dkt. 1.)

On January 21, 2011, Page filed a motion for summary judgment seeking to
resolve all three claims, contending Wicklund knowingly and voluntarily consented to the

polygraph examination. (Dkt. 41.) Wicklund opposed the motion, asserting he was suffering withdrawal from prescription narcotics and therefore lacked the ability to knowingly consent because he was unaware of what was happening to him.

After submitting his reply brief on March 3, 2011, Page on March 9, 2011, filed a motion to strike portions of the affidavits of Mark Wicklund and Chip Morgan, including all exhibits, that were submitted in opposition to the motion for summary judgment. (Dkt. 51.) Wicklund did not file an opposition to the motion to strike.

Prior to the hearing, the Court issued an order on May 9, 2011, directing the parties to argue their respective positions on the issue of proximate cause as it related to Wicklund's civil rights claim under the Fifth Amendment. (Dkt. 53.) The Court conducted a hearing on both motions on May 16, 2011. After carefully considering the parties' briefs, evidence, and oral argument, the Court recommends that Defendant's Motion for Summary Judgment and his Motion to Strike be denied.[1] The reasons for the Court's recommendation are explained below.

---

[1] The only other Defendant, Idaho Department of Correction, previously filed a motion for summary judgment, and the Court recommended that it be granted. (Dkt. 35, 43.) Neither party filed an objection to the Report and Recommendation. The District Judge has not issued an order adopting it, however, and therefore the claims against the Idaho Department of Correction have not been dismissed as of the date of this Report.

**FACTS**

**1. Undisputed Facts**

On May 8, 2001, Wicklund was indicted on felony charges and later entered a plea of guilty on August 27, 2001, to the charge of sexual battery of a minor child age 16/17 years of age. (Aff. of Klaas Ex. 1, Dkt. 41-1.) Ada County District Judge Thomas Neville entered a judgment of conviction, an order suspending execution of the judgment, and an order of probation on November 15, 2001. (*Id.* Ex. 6, Dkt. 41-9.) The court sentenced Wicklund to incarceration for a term of seven years, with two years fixed and five years indeterminate, which sentence was suspended and a seven year probationary period imposed instead. (*Id.*) The terms of probation required supervision and specifically prohibited Wicklund from having any access to "on-line or internet computer service, including e-mail" without permission from his supervising officer. (*Id.*)

On January 3, 2008, Wicklund's probation officer learned that Wicklund had a current account on a social internet network, MySpace.com. (Aff. of Klaas Ex. 2, Dkt. 41-5.) On January 4, 2008, Wicklund's probation officer conducted a search of Wicklund's computer and confirmed that Wicklund had a current account on MySpace.com. (*Id.*) The computer also allegedly contained sexually explicit images and password protection software. (*Id.*)

On January 4, 2008, Wicklund was arrested on charges that he had violated the conditions of his probation and he was taken into custody at the Ada County Jail in Boise, Idaho. (Aff. of Wicklund ¶ 5, Dkt. 44.) He was next transported from the Ada County Jail

to the office of Defendant James F. Page ("Page") on January 11, 2008, where Page administered a polygraph exam to help determine whether Wicklund in fact had violated the terms of his probation. (Compl. ¶ 12, Dkt. 1; Aff. of Page, Dkt. 35-4.)

Wicklund alleges that, when his probation officer arrested and transported him to the Ada County Jail, he was taking Norco, a narcotic for which he had a prescription. (Aff. of Wicklund ¶¶ 2–3, Dkt. 44.) Jail regulations prohibit inmates from taking narcotics and, as a result, Wicklund was not permitted to take his prescribed pain medications while he was incarcerated. (Aff. of Wicklund ¶ 5, Dkt. 44.)

Before administering the polygraph examination on January 11, 2008, Page provided and orally read to Wicklund a written consent form. (Third Aff. of Page Ex. 2, Dkt. 41-14.) The consent form stated that the polygraph was given voluntarily, and provided notice that the person being examined could remain silent and may exercise that right at any time. (*Id.*). The polygraph report Page prepared indicated he asked Wicklund three questions, all of which related to whether Wicklund used MySpace.com as a resource for meeting sexual partners. (*Id.*) The report scored Wicklund's answers as "deceptive." (*Id.*)

The prosecutor requested a probation revocation hearing on January 23, 2008, which motion was amended on May 13, 2008. (Aff. of Klaas Ex. 1, 7, Dkt. 41-4, 41-10.) The allegations were that Wicklund had violated the terms of probation in three respects: (1) he had internet access that was not work related; (2) his computer contained a password protected file; and (3) the computer contained sexually explicit pictures. (*Id.*) A

hearing was held on August 6, 2008, regarding the alleged probation violations. (Aff. of

Klaas Ex. 8, Dkt. 41-11.) According to the exhibit list, the prosecutor introduced the

MySpace.com page from Wicklund's computer; Wicklund's MySpace.com friend's list

page; the sex offender agreement of supervision; and two defense exhibits submitted by

Wicklund. (Aff. of Klaas Ex. 3, Dkt. 41-6.) There is no evidence in the record indicating

whether the polygraph report or the statements Wicklund made during the polygraph

examination were introduced during or referenced at the hearing.

The court found that Wicklund violated the conditions of his probation as charged

in allegation number one by having internet access that was not work related, and

dismissed allegations two and three. (Aff. of Klaas Ex. 8, Dkt. 41-11.) Rather than impose

incarceration, the court ordered that probation be reinstated and extended through

November 13, 2011, and that Wicklund's internet access be suspended indefinitely. (*Id.*)

**2. Additional Facts**

Wicklund claims that his withdrawal from medication after his arrest on January 4,

2008, and before the polygraph examination on January 11, 2008, made him physically

ill, incoherent, and unable to think clearly. (Compl. ¶¶ 11–12, Dkt. 1; Aff. of Wicklund

¶ 6.) Given his mental state, he claims that he does not recall the polygraph examination

or signing a consent or waiver, and that he was suffering from "detoxing from Norco"

that rendered him incoherent. (Aff. of Wicklund ¶¶ 10, 12.) Wicklund therefore alleges

that he lacked the ability to waive his Fifth Amendment right to protection from

self-incrimination, the ability to consent to the polygraph examination, and the ability to

respond to the questions that Page asked. (Compl. ¶ 19, Dkt. 1.) Wicklund contends that Page was aware of his impaired condition when Page conducted the polygraph examination of him. (Compl. ¶ 19, Dkt. 1.)

Both Officer Sutherland and Chip Morgan, another polygraph examiner who worked with Page, were present during the polygraph examination. Both were of the opinion that Wicklund was not fit to undergo a polygraph examination and did not seem capable of understanding why he was at Page's office. (Aff. of Morgan ¶ 5, 7, Dkt. 45; Aff. of Wicklund Ex. A, Dkt. 44.) Officer Sutherland testified during the probation revocation hearing that, prior to taking the polygraph examination, Wicklund did not seem lucid. (Aff. of Wicklund Ex. A, Dkt. 44.)

Page insists that Wicklund did not appear to be suffering from any mental impairment due to drugs or alcohol, and appeared capable of understanding and waiving his rights as described in the consent form. (Third Aff. of Page ¶ 13, Dkt. 41-12.) Page submitted the videotape recording of the polygraph examination to the Court to support his motion for summary judgment. (Third Aff. of Page ¶ 10 Ex. 1, Dkt. 41-12.)

## DISPOSITION

## 1. Motion for Summary Judgment

### A. *Rule 56 Standards*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[2]

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved

---

[2] Page cites the wrong legal standard in his brief in support of his motion for summary judgment. The standard is not whether a "reasonable jury" could conclude that Wicklund was aware and lucid enough to waive his rights, but whether there is no genuine dispute concerning a material fact such that the Court can rule as a matter of law.

only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981). However, it is not for the Court to determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

The United States Court of Appeals for the Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

**REPORT AND RECOMMENDATION - 8**

**B.** *Whether Wicklund Waived his Fifth Amendment Privilege Against Self-Incrimination*

To state a claim under Section 1983, a plaintiff must allege a violation of a constitutional or federal statutory right proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Wicklund alleges that he lacked the ability to consent to the polygraph examination, and in answering the questions, he was forced to incriminate himself in violation of his Fifth Amendment right against self-incrimination. Wicklund contends that he was not aware of his surroundings, and was undergoing severe symptoms of narcotic withdrawal. Therefore, Wicklund alleges he could not and did not knowingly consent to waive his Fifth Amendment privilege against self-incrimination.

Page asserts that Wicklund cannot establish a prima facie element of his Section 1983 claim on the grounds that Wicklund knowingly, voluntarily, and without duress, waived his Fifth Amendment privilege against self-incrimination. Page asserts that, "based upon the totality of the circumstances," including the videotape of the polygraph examination, no "reasonable jury" could conclude that Wicklund was incoherent or unaware of his surroundings. Therefore, Page argues that Wicklund's consent to waive his Fifth Amendment rights was knowing and voluntary.

The Court here cannot conclude as a matter of law that Wicklund waived his Fifth Amendment right against self-incrimination and knowingly and voluntarily consented to

the polygraph examination. To prove a valid waiver of Miranda[3] rights, the waiver must represent an "uncoerced choice," and the defendant must understand both the nature of the right being waived and the consequences of waiver. *U.S. v. Richards*, No. CR 06-129-N-EJL, 2006 WL 3743807 *1 (D. Idaho Dec. 18, 2006.) But the facts concerning Wicklund's state of mind and his ability to understand his rights are disputed in this case. Wicklund claims he did not understand where he was and does not remember the polygraph examination. Two individuals who were present at the time of the polygraph examination were also of the opinion that Wicklund did not appear lucid. On the other hand, Page contends that Wicklund appeared to understand everything about the proceedings that took place on January 11, 2008.

Page invites the Court to judge for itself by watching the video tape of the actual polygraph examination, arguing that no "reasonable jury" could conclude after watching the video that Wicklund was anything other than mentally competent and capable of waiving his Fifth Amendment rights. What Page asks the Court to do, however, is beyond the purview of summary judgment in this case. The Court is not permitted to weigh the evidence or to judge the credibility of witnesses, and is limited to deciding a pure

---

[3] The consent form that Wicklund signed prior to undergoing the polygraph examination contained the requisite Miranda warning. (Aff. of Page Ex. 2, Dkt. 41-14.) At the time of the polygraph examination on January 11, 2008, Wicklund was in police custody and being held in the Ada County jail. *Miranda v. Arizona*, 384 U.S. 436 (1966), held that statements obtained from a defendant stemming from a custodial interrogation of the defendant without full warning of his constitutional rights, were inadmissible as having been obtained in violation of the Fifth Amendment privilege against self-incrimination. Neither party argued that *Miranda*, and the legal principles stemming from its holding, are not applicable here.

question of law. *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir. 1978). All evidence is viewed in the light most favorable to the non-moving party, in this case Wicklund, and Wicklund is entitled to all inferences that can properly be drawn in his favor. *Guam Federation of Teachers v. Ysrael*, 492 F.2d 438, 441 (9th Cir. 1974). The Court on summary judgment may not infer, upon watching the video taped polygraph examination, that Wicklund understood the rights he was waiving or was capable of making such a choice.

The cases Page cites in support of his argument that the Court can and should make such a determination on the basis of the video taped polygraph examination are inapplicable in this case. Page cites several cases for the proposition that being under the influence of drugs or medication is irrelevant if the suspect's statement was the product of a rational intellect and a free will, and that drug withdrawal symptoms are not enough to render an individual's statements to police involuntary. *See, e.g., Shackleford v. Hubbard*, 234 F.3d 1072, 1080 (9th Cir. 2000); *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000).

However, all of the cases Page cites involved an evidentiary ruling by the Court in the context of a criminal proceeding and resultant motion to suppress evidence obtained in violation of the Fifth Amendment privilege against self-incrimination, and the court was required to deny or grant the motion. In such circumstances, the Court is instructed to "weigh the totality of the circumstances" and determine the credibility of the witnesses.

*U.S. v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000). The same is not true upon summary judgment. In a civil case, that is a task left to the jury.

Accordingly, the Court recommends that summary judgment be denied on the grounds raised by Defendant Page, because the material facts surrounding Wicklund's state of mind and his capacity to waive his Fifth Amendment rights are in dispute. For the same reasons, the Court recommends that Page's motion regarding the two state law claims for negligence and battery be denied, considering Page asserts the same arguments in support of his motion on those two claims. Nevertheless, the Court's conclusion does not end the Court's recommendation.

### C. The Court Recommends that Leave Be Allowed for Wicklund to Amend his Complaint and for Defendant Page to File A Second Motion for Summary Judgment

The 2010 amendments to Fed. R. Civ. P. 56, which became effective on December 1, 2010, permit the Court after giving notice and a reasonable time to respond to:

> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f). The Court may invite a motion, in which case the procedure of Fed. R. Civ. P. 56(c) is triggered. 2010 Official Cmt, Fed. R. Civ. P. 56.[4]

---

[4] The Court finds further authority under 28 U.S.C. § 1915(3)(2) for its recommendation that the parties submit additional briefing and affidavits. Wicklund requested in forma pauperis status under 28 U.S.C. § 1915(a), which was granted. (Dkt. 3, 28.) 28 U.S.C. § 1915(3)(2) permits a court to dismiss a case at any time if it determines that the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune

In this case, the Court finds it appropriate to invite a second motion for summary judgment to consider the issue of causation. Although the Court solicited argument on this issue, the Court is unable based upon the record before it to make a recommendation regarding summary judgment on the issue of causation.

The Court's inability to rule stems from both parties' failure to address an element of Plaintiff's prima facie case. Plaintiff must establish that Defendant's actions "caused" the deprivation of a constitutional right. 42 U.S.C. § 1983; *Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). "The causation requirement of § 1983 . . . is not satisfied by a showing of mere causation in fact[;] [r]ather, the plaintiff must establish proximate or legal causation." *Arnold*, 637 F.2d at 1355. The Ninth Circuit has explained: "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivations of which [plaintiff] complains." *Id.* (internal citation omitted); *see also Stevenson v. Koskey*, 877 F.2d 11435, 1439 (9th Cir. 1989) (setting forth the three alternative elements of causation required under *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)).

from such relief. Upon hearing the arguments of the parties, examining the record and the relevant authority, the Court finds that additional briefing is necessary. There may be additional grounds for dismissal under 28 U.S.C. § 1915 as well, for non-payment of the filing fee. The Court ordered Wicklund to pay $25 per month toward the $350 filing fee beginning in June 2010. The Court does not find any evidence in the record indicating Wicklund has ever paid any portion of the filing fee.

Yet, under the case law interpreting the Fifth Amendment, the Complaint is lacking facts or even an allegation to support the element of causation in the context of Wicklund's Fifth Amendment claim, and the parties failed to adequately address the issue in the briefs. (*See* Def.'s Mem. at 5 n.1, dkt. 41-1.)

The Fifth Amendment expressly requires "use" of the allegedly coerced statements. In other words, coercive police questioning, standing alone, does not constitute a violation of an individual's Fifth Amendment privilege against self-incrimination.

Importantly, the Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." This privilege not only "permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). Defendants convicted of a crime and who are either imprisoned or on probation do not lose this right. *Minnesota*, 465 U.S. at 426. However, the answers of a witness are not "compelled" within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of privilege. *Minnesota*, 465 U.S. at

427. In other words, the witness must assert the privilege to claim its protections, for if he chooses to answer, his choice is considered voluntary. *Id*. at 429.[5]

But coercive police questioning, in and of itself, does not violate the Fifth Amendment unless the statements obtained through that questioning are subsequently "used" in a "criminal case." *Chavez v. Martinez*, 538 U.S. 760, 766–67 (2003) (Thomas, J., joined by Rhenquist, C.J., O'Connor, J., and Scalia, J.) In *Chavez*, the United States Supreme Court in a plurality opinion expressed that a criminal case "at the very least requires the initiation of legal proceedings." *Id.* The Supreme Court held that the Fifth Amendment was not violated in *Chavez* because the defendant, although perhaps questioned improperly, was never prosecuted for a crime. *Chavez*, 538 U.S. at 767. "[T]he mere use of compulsive questioning, without more," does not violate the Constitution. *Id.*

Recently, the Court of Appeals for the Ninth Circuit examined the meaning of "use" announced by *Chavez* in a case where the defendant's coerced statements were used against him in an affidavit filed in support of a criminal information. *Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009). In *Stoot*, Paul, a twelve year old boy, was questioned coercively and eventually admitted to sexually assaulting a four year old girl. Criminal charges were filed against Paul on the basis of the confession. The trial court

---

[5] The Court does not mean to simplify the elements of the Fifth Amendment privilege. There are other nuances to the privilege against self-incrimination that are not at issue here. For example, the privilege is considered self-executing when a suspect is in custody, requiring the giving of *Miranda* warnings. *Minnesota*, 465 U.S. at 430–31. In this case, however, the only issue argued by the parties is whether Wicklund voluntarily waived the privilege by failing to assert his rights and answering the questions posed during the polygraph examination.

found that the confession was obtained coercively and therefore was inadmissible, and dismissed the charges. Paul's parents brought a Section 1983 claim for violation of Paul's Fifth Amendment privilege against compelled self-incrimination. The trial court dismissed the Section 1983 claim, holding that the Fifth Amendment was not violated because Paul's statements were never used against him at trial.

Examining *Chavez*, the Ninth Circuit reversed the district court's decision. The Court of Appeals held that Paul's coerced statements were "used" against him because they were set forth in the affidavit filed in support of the Information charging him with child molestation, and again relied upon at his pretrial arraignment and bail hearing. *Stoot*, 582 F.3d at 923–24. In reaching its conclusion, the court rejected the holdings of the Third, Fourth, and Fifth Circuits, which have applied *Chavez* to bar recovery under the Fifth Amendment unless the allegedly coerced statements were admitted against the defendant "at trial." *Stoot*, 582 F.3d at 924.

Instead, the Ninth Circuit followed the holdings of the Seventh and Second Circuits, which reached a different conclusion. *Stoot*, 582 F.3d at 924. The Second and Seventh Circuits found that, so long as criminal proceedings were commenced in reliance upon coerced statements, such reliance was enough to constitute "use." *Stoot*, 582 F.3d at 924–25 (citing *Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006 (7th Cir. 2006) and *Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)). The Ninth Circuit held that a coerced statement has been "used" in a criminal case "when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may

proceed, and to determine pretrial custody status." *Stoot*, 582 F.3d at 925. But, concerning

the issue of causation, the Ninth Circuit held that Paul's rights under the Fifth

Amendment "were not violated until the allegedly coerced statements were used against

him in an affidavit filed by the prosecutor and at arraignment." *Stoot*, 582 F.3d at 926.

More recently, the Ninth Circuit in *Crowe v. County of San Diego*, 608 F.3d 406,

429 (9th Cir. 2010), held that coerced statements used in several criminal pre-trial

proceedings, including grand jury proceedings, gave rise to a Fifth Amendment cause of

action. In *Crowe*, the Ninth Circuit extended liability to a police officer who procured

incriminating statements, even though the prosecutor rather than the police officer

actually introduced the coerced statements against the defendants during the pre-trial

proceedings. *Crowe*, 608 F.3d at 430–31. Although the police officer did not make the

decision to introduce the statements, the court found the officer's acts were the proximate

cause of the Fifth Amendment violation because the officer "could reasonably have

foreseen that a coerced confession would be used against the suspect and would lead to

the suspect's detention." *Crowe*, 608 F.3d at 430-331 (quoting *Higazy v. Templeton*, 505

F.3d 161, 177 (2d Cir. 2007)). However, it was not until the coerced statements were

"used" at the three pre-trial proceedings that the defendant's Fifth Amendment rights

were violated. *Crowe*, 608 F.3d at 429. *See also Foti v. County of Marin*, No. C09-4167-

CRB, 2010 WL 957645 *6 (N.D. Cal. March 12, 2010) (relying upon *Stoot*, the court

found no Fifth Amendment violation when the statements were not used "to initiate or

prove a criminal charge").

**REPORT AND RECOMMENDATION - 17**

In this case, the allegedly coerced statements Wicklund uttered during the polygraph examination relate to post-conviction proceedings. The precise issue of whether post-conviction proceedings constitute "criminal proceedings" for purposes of the Fifth Amendment analysis discussed above has not been decided by the Ninth Circuit. Nevertheless, probation revocation proceedings likely fall within the broad category of "criminal proceedings" based upon extension of *Stoot* and *Crowe*, considering probation revocation proceedings may result in a loss of liberty, require both a preliminary and final hearing, the opportunity to be notified of the claimed violations, and the opportunity to be heard and present witnesses. *U.S. v. Segal*, 549 F.2d 1293, 1297 (9th Cir. 1997) (describing the potential loss of liberty and rights implicated in probation revocation proceedings). Accordingly, the Court concludes that the probation revocation proceedings at issue in this matter constitute a "criminal proceeding."

Having so concluded, it is apparent that the parties overlooked a crucial issue in this case. The Complaint alleges only that the polygraph examination, without more, constituted a violation of Wicklund's Fifth Amendment privilege against self-incrimination. (Compl. ¶ 21, Dkt. 1.) Wicklund failed to allege, however, how the statements obtained during the polygraph examination[6] were "used" during any portion of the probation revocation proceedings. And, despite prompting by the Court both prior to

---

[6] The Court has not and, as explained above, cannot on the record before it decide whether Wicklund's statements during the polygraph examination were coerced because he lacked the ability to understand or assert his right to remain silent. This issue must be left for a jury to determine at trial.

and at the time of the hearing, neither party could identify how or when the allegedly

coerced statements obtained during the polygraph examination were "used."[7] Wicklund

suggested that the statements obtained might have been used prior to the actual probation

revocation hearing, but noted that there was a lack of evidence in the record. The Court

agrees that, based upon the record before it, there is insufficient evidence to determine the

extent, if any, Wicklund's statements obtained during the polygraph examination were

used by the prosecution during any portion of the probation violation and revocation

proceedings.[8]

### 3. Motion to Strike

Page filed a motion to strike portions of the Affidavit of Mark Wicklund (Dkt. 44),

specifically paragraphs 7, 8, 11, 13, 14, 15, 16, 17, portions of paragraph 4 relating to

medical opinion testimony, Exhibit A, the audio recording of Wicklund's probation

---

[7] Officer Sutherland prepared and submitted a Report of Probation Violation to Judge Neville that contained a summary of the polygraph results. (Aff. of Klaas Ex. 2, Dkt. 41-5.) However, it is not clear on the record what role, if any, the summary of the polygraph results contained in the Report played either in initiating or substantiating the allegations eventually brought before the court in the Prosecutor's motion for probation violation, or at any other time prior to the revocation hearing.

[8] There may well be issues other than the causation issue that also are appropriate for the Court to determine upon summary judgment. Not wishing to give an advisory opinion, the Court notes only that other deficiencies are present on the face of the Complaint, and the parties would be well advised to raise the issues now. *See, e.g., Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that where a favorable verdict in a civil rights action would necessarily imply the invalidity of a plaintiff's conviction, plaintiff must first prove that the conviction or sentence has been reversed on direct appeal). The Court, however, did not invite additional argument on any issues other than causation. The parties may raise them if they so choose, but are advised to gain an understanding of the nuances of Section 1983 before doing so, as well as the standard applicable to motions for summary judgment.

violation hearing, and Exhibit B, Wicklund's narrative complaint to Northwest Polygraph

Examiners Association. In addition, Page moved to strike paragraphs 10, 12, 13, and 14

of the Affidavit of Chip Morgan (Dkt. 45). The motion was unopposed. With the

exception of Exhibit A, the audio recording of Wicklund's probation violation hearing,

none of the testimony sought to be stricken was material to the Court's recommendation

to deny Page's motion for summary judgment.

As for the audio recording of Wicklund's probation violation hearing, Page sought

to exclude it on the grounds that Wicklund did not provide the proper authentication for

admission of the evidence under Fed. R. Evid. 901, and because it is hearsay. Wicklund

indicated that he obtained a copy of the audio recording of the hearing from the Ada

County District Court, that he submitted a true and accurate copy of the audio recording,[9]

and that he was present during the hearing that is recorded on the audio CD. Fed. R. Evid.

901 simply requires that evidence be authenticated as a condition precedent to

admissibility by evidence sufficient to support a finding that the matter in question "is

what its proponent claims." In the instant case, Wicklund's testimony sufficiently

established that the audio recording is what Wicklund claims it to be.

Moreover, Fed. R. Civ. P. 56(c)(4) requires only that an affidavit "set out facts that

would be admissible in evidence." A party may object that the material cited to support a

fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P.

---

[9] The Court reviewed the audio CD. It contains only a portion of the probation revocation
proceedings beginning with the cross examination of Officer Sutherland, oral argument of
counsel, and then concluding with the judge's oral ruling.

56(c)(2). In this case, Wicklund seeks to introduce the prior testimony of Mr. Sutherland, Wicklund's probation officer, via the audio recording of the hearing. Although the testimony falls squarely within the definition of hearsay, Fed. R. Evid. 801(c), the audio recording of the court proceeding is admissible under one of several exceptions to the hearsay rule. For instance, the recording is a record of regularly conducted activity, Fed. R. Evid. 803(6); a public record of a court proceeding, Fed. R. Evid. 803(8); and it constitutes former testimony given as a witness at another hearing, Fed. R. Evid. 804(b)(1). Therefore, the audio recording is not excluded as hearsay because it satisfies one or more of the exceptions to the hearsay rule.

Accordingly, the Motion to Strike will be denied.[10]

## 4. Wicklund's State Law Claims

Page also seeks summary judgment on Wicklund's state law claims for battery and negligence. Page asserts that Wicklund expressly consented to the polygraph examination, thereby precluding his battery claim, and that there was no causal relationship between the statements uttered and Wicklund's resulting damages for the negligent administration of the polygraph test. Based upon the Court's analysis, the Court recommended, *supra*, that summary judgment be denied as to the two state law claims. The facts are disputed concerning Wicklund's ability to consent, and Page failed to carry

---

[10] The District Judge referred all pretrial matters for disposition to the undersigned Magistrate Judge. (Dkt. 5.) Therefore, under 28 U.S.C. § 636 (b)(1)(A), the undersigned has the authority to hear and determine the motion to strike without issuing a report and recommendation.

his burden under summary judgment to demonstrate how, in fact, the results of the polygraph test were "used" such that damages might stem from a violation. Therefore, the Court recommends that summary judgment be denied as to these two claims for the same reasons it recommends denial of the Section 1983 claim.

## CONCLUSION

Based upon the foregoing, the Court finds that there are genuine and disputed issues of material fact and that summary judgment should be denied. Moreover, given the parties have missed the point in this Section 1983 action, the Court recommends that the Plaintiff consider amendment of his Complaint and Defendant Page consider filing a second motion for summary judgment, along with supporting and opposing affidavits, so the Court can consider fully the relevant issues. Causation, an essential element of Wicklund's prima facie case, is not properly alleged in the Complaint, nor did the parties have an adequate opportunity to address the issue on the record before the Court in the context of Page's first Motion for Summary Judgment. In addition, there may well be other issues appropriate for the Court's consideration on summary judgment apart from Wicklund's state of mind and ability or lack thereof to waive his Fifth Amendment rights. The parties would be well advised to raise those issues now.

The Court notes that, because of the extensive motion practice seeking dismissal of this case by the parties for various reasons and at various times, no scheduling conference

has been conducted. (Dkt. 5, 20, 32, 33, 34, 39).[11] The Court therefore recommends that the Court's order include appropriate deadlines for limited discovery related to the Court's recommendation that leave be provided for Plaintiff to amend his Complaint and for Defendant Page to file a second motion for summary judgment.

---

[11] In its report and recommendation recommending that Defendant Page's motion to dismiss be denied, the Court ordered that the parties submit a proposed litigation plan to the Court by August 20, 2010. (Dkt. 32.) The parties did so. (Dkt. 33, 34.) However, the report and recommendation was not adopted until January 7, 2011. (Dkt. 39.) Shortly thereafter, on January 21, 2011, Defendant Page filed the instant motion for summary judgment. (Dkt. 41.) Therefore, no scheduling conference was held.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendant's Motion for Summary Judgment (Dkt. No. 41) be **DENIED.**

2) Deadlines be imposed for limited discovery, amendment of pleadings, and a second motion for summary judgment by Defendant Page.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

## ORDER

**NOW THEREFORE IT IS HEREBY FURTHER ORDERED:**

1) Defendant's Motion to Strike (Dkt. No. 51) is **DENIED**.

DATED: May 25, 2011

_____

Honorable Candy W. Dale
Chief United States Magistrate Judge